FILED
DEC 11 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RUSSELL JAY SEDGWICK, <br><br> Defendant. | Magistrate's Case No. '19MJ 5495 <br><br> COMPLAINT FOR VIOLATION OF: <br> 21 U.S.C. § 841(a)(1) and 846 - Conspiracy to Distribute Methamphetamine |

The undersigned complainant being duly sworn states:

### Count 1

Beginning on a date unknown and continuing up to and including April 4, 2019, within the Southern District of California and elsewhere, defendant RUSSELL JAY SEDGWICK, did knowingly and intentionally conspire with other persons known and unknown, to distribute 50 grams and more of methamphetamine (actual), a Schedule II Controlled Substance; all in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

_____
Jacob Sanchez
Task Force Officer, DEA

Sworn to before me and subscribed in my presence, this 11th day of December, 2019.

_____
The Honorable Karen S. Crawford
United States Magistrate Judge

## PROBABLE CAUSE STATEMENT

I, Jacob Sanchez, being duly sworn, declare under penalty of perjury that the following statement is true and correct:

## TRAINING AND EXPERTISE

I am a peace officer employed by the San Diego Sheriff's Department (SDSD) and have been so employed for about 4 years. During my tenure, I have been assigned to the patrol, crime suppression team, and the East County Regional Gang Task Force. I am currently deputized as a federal Task Force Officer (TFO) assigned to the Drug Enforcement Administration (DEA) Narcotics Task Force (NTF). Prior to my employment with the Sheriff's Department, I was an agent with the U.S. Border Patrol for over eight years. As an agent with Border Patrol, I was assigned as a TFO with the DEA for approximately two and a half years. I was also assigned to the Sheriff's High Intensity Drug Trafficking Area Task Force (HIDTA) for three years. I have been recognized in San Diego Superior Court as an expert witness relating to narcotic investigations and have testified as such.

In addition to my formal training, I have received on the job training in the manner in which narcotics are packaged, consumed, transported and sold. I have spoken to narcotics officers, drug users, drug dealers, and informants regarding the manner in which narcotics transactions are commonly carried out, how narcotics are packaged for sale, and how drug dealers store, conceal, sell, smuggle, and transport narcotics. Through previous investigations, I have obtained knowledge regarding the ordinary meaning of controlled substance slang and jargon. I have testified multiple times as an expert witness for narcotics possession/sales cases in San Diego County Superior Court. I have monitored and reviewed thousands of recorded telephone calls pursuant to Title III court orders in narcotics and gang related investigations as well as handled confidential sources with access to drug dealers and gang members.

## OVERVIEW OF INVESTIGATION

OCDETF Operation Empty Backpack was a long-term investigation led by the Drug Enforcement Administration and the Internal Revenue Service targeting multiple San Diego based drug distribution and money laundering networks led respectively by Juan Carlos OCHOA, Rene VALDEZ Jr., Ramon CASTILLO, Michael WRIGHT, Alfonso ARROYO, Douglas BOWEN, Samuel BECERRA, and Javier VERGARA. These independent yet interlocking networks supplied multi-pound quantities of controlled substances (primarily methamphetamine and heroin) to dozens of subdistributors located throughout Southern California.

On December 28, 2018, investigators obtained authorization to intercept wire and electronic communications of ARROYO (TT9), BRANCH (TT10), and BOWEN (TT11). Interceptions began on December 30, 2018 and expired on January 28, 2019. BRANCH discontinued using TT10 prior to the initiation of the intercepts. Based on the fourth round of intercepts, investigators learned that ARROYO directed his own methamphetamine distribution and money laundering network, which included James Anthony TATE, Alice CHAIREZ, Zena Marie GONZALES, Steven GEISS, Tommy Diego DUENAS, Josephina HERNANDEZ, and Kajlid Jafar WILKS. Agents also coordinated a one-pound methamphetamine seizure involving ARROYO and CASTILLO. During this fourth round of intercepts, agents learned that BOWEN was a prolific supplier of methamphetamine and heroin. During this round, agents conducted multiple seizures involving BOWEN, Erick CIFUENTES, John BORDWELL Jr, and Javier VERGARA.

On March 7, 2019, investigators obtained authorization to intercept wire and electronic communications of ARROYO (TT9), BOWEN (TT11), Samuel BECERRA (TT12), and Javier VERGARA (TT13 and TT14). Interception began on March 8, 2019, and expired on April 6, 2019. During the fifth round, agents continue to target

BOWEN's distribution network and conducted additional enforcement operations against Maximino PADILLA, Erika Marlene RAMIREZ-Ramirez, Justin Scott BAKER, Janette Lee TAYLOR, Emilio VANEGAS, and Christopher NOBIS. Based on the fifth round of intercepts, investigators confirmed that BECERRA directed his own methamphetamine distribution and money laundering network, which included Gabrielle LOGUE, Kelly DANIELS, Larry MEISNER, Walter KUTTNER, Kelly Jean KELLY, Kurt ROIZ, Rodolfo ANDRADE, and Alfredo GOMEZ. Lastly, agents identified Javier VERGARA as a significant methamphetamine trafficker in his own right. He worked closely with Raul Alonso VARELA-Ruiz, Michelangelo BECERRA, Candice HARRINGTON, Amanda BITTICKS, Eduardo E. PARDO, Ricardo LIZARRAGA, and Rose VELASQUEZ.

Through these wiretap interceptions, multiple seizures, coordinated enforcement operations, and extensive surveillance, agents uncovered the operation of these networks and substantial evidence implicating the targets. In conjunction with the wiretaps, investigators ultimately seized or purchased approximately 20 pounds of methamphetamine tied to these networks.

### IDENTIFICATION OF RUSSELL JAY SEDGWICK

During the investigation, agents identified RUSSELL JAY SEDGWICK as a San Diego based methamphetamine subdistributor for Douglas BOWEN. SEDGWICK was intercepted using telephone numbers (619) 718-0579 and (619) 245-3598. Between January 1, 2019, and April 4, 2019, agents intercepted multiple telephone calls and text messages exchanged between BOWEN and SEDGWICK in which they discussed narcotics transactions, some of which are detailed below. Agents identified phone number (619) 718-0579 being used by SEDGWICK through recorded jail phone calls between Chad "Blaze" TOWNSEND and Amber CHAVEZ on March 22, 2019. Both are known San Diego Skin Head associates, the gang to which

SEDGWICK has admitted that he is of the upper echelon. During the recorded conversation, TOWNSEND asks CHAVEZ for "Lil JJ's" phone number, which is known by case agents to be SEDGWICK. Case agents have called SEDGWICK by his moniker in person during interviews, to which SEDGWICK responds. CHAVEZ provided the phone number of (619) 718-0579. Agents also identified (619) 245-3598 as being used by SEDGWICK through voice comparison.

BOWEN and SEDGWICK routinely used these telephones to facilitate narcotics transactions and receive drug proceeds. For example, on January 1, 2019, during an intercepted telephone call, BOWEN asked SEDGWICK "if he was ready to get this money" because BOWEN had rented a motel room. BOWEN and SEDGWICK discuss both pitching in money to rent the hotel room, which BOWEN stated he would place SEDGWICK in the room in order to make money. Based on our investigation, I believe that SEDGWICK and BOWEN were renting a hotel room to facilitate multiple drug deals away from their primary residence, in order to avert law enforcement detection.

On January 8, 2019, agents intercepted another telephone conversation between BOWEN and SEDGWICK. During the intercepted conversation, BOWEN asked if SEDGWICK was at the predetermined location. BOWEN said he was right around the corner and asked SEDGWICK how much (narcotics) he would want. SEDGWICK asked for the narcotics on a credit basis, in order to sell a portion, and pay BOWEN for the amount that was fronted on credit. BOWEN agreed. Later that day, agents intercepted another telephone conversation between BOWEN and SEDGWICK. During this intercepted conversation, they discussed BOWEN selling narcotics to SEDGWICK. BOWEN offered to meet at his residence near the Wal-Mart on Aero Drive. BOWEN asked SEDGWICK if he would like to try the narcotics, to which SEDGWICK stated he would like to, and if it was of good quality, SEDGWICK

would obtain an additional amount. BOWEN assured SEDGWICK the narcotics were of good quality. BOWEN and SEDGWICK ultimately agreed to meet at the Wal-Mart, at a location they had met on previous occasions. SEDWICK observed marked law enforcement units in the area, and changed the purchase location to BOWEN's residence to avoid apprehension.

On January 9, 2019, during an intercepted telephone call between SEDGWICK and BOWEN, SEDGWICK called asking for a "thing" (narcotics). BOWEN replied, "another piecey" (ounce of illegal narcotics). SEDGWICK affirmed and BOWEN confirmed the amount. SEDGWICK stated he was arranging the deal for a female named "Littles from National City." BOWEN agreed and said he would call back and confirm, and told SEDGWICK to hold off on setting up the deal. SEDGWICK sent a follow up text to BOWEN, "holler at me if u feel comfortable with only dealing with me let me know it will go down how u want." SEDGWICK sent this text message to BOWEN to assure him it was safe to conduct the drug transaction, even offering to conduct the deal himself. BOWEN replied, "ok." A follow up phone call occurred with BOWEN and SEDGWICK discussing safety measures for the narcotics deal, as BOWEN "did not fuck with eses (Hispanic gangsters) because they set people up all the time." SEDGWICK offered to conduct the drug transaction himself to keep BOWEN at ease.

On January 12, 2019, during an intercepted telephone call between BOWEN and SEDGWICK, SEDGWICK informed BOWEN he had just been in a high speed pursuit with law enforcement, but was able to evade arrest. SEDGWICK said he was able to get away, but broke his wrist during the process. BOWEN and SEDGWICK discussed BOWEN resupplying SEDGWICK, to which SEDGWICK said he did in fact need additional narcotics, and he knew people who would like additional narcotics as well.

On January 18, 2019, a text message sent from SEDGWICK to BOWEN stated, "look homie u sleeping on the job I got biz guess I'm gonna have to hit someone else up." This was in reference to a previously arranged drug deal between SEDGWICK and BOWEN in which BOWEN was going to resupply SEDGWICK with narcotics.

On June 26, 2019, case agents arrested SEDGWICK in possession of approximately a quarter pound of methamphetamine and a loaded firearm in his waistband. During the arrest, SEDGWICK appeared to be reaching for the firearm. This case is currently in proceedings with the District Attorney's Office, in which SEDGWICK failed to appear for a hearing and is again a wanted fugitive. This last arrest is indicative of SEDGWICK continuing to be involved in drug trafficking.

Record checks conducted on SEDGWICK revealed numerous arrests and, in part, the following criminal history:

| Date | Court | Charge | Disposition |
|---|---|---|---|
| 10/19/2017 | Ca. Sup. Ct: San Diego | 29800-PC-Felon Addict Poss Firearm. | 3 yrs prison |
| 02/27/2014 | Ca. Sup. Ct.: San Diego | 33600-PC-Manufacture/Sale Possess Gun while on Felony 29800 PC- Felon Addict Poss Firearm | 4 yrs prison |
| 06/21/2011 | Ca. Sup. Ct.: San Diego | 11379 H&S-Transport Control Sub | 4 yrs prison |
| 08/16/2004 | Ca. Sup. Ct.: San Diego | 11370.1 H&S- Poss Control Sub While Armed | 3 yrs prison |
| 10/11/2000 | Ca. Sup. Ct.: San Diego | 459 PC-Burglary | 3 yrs probation, 270 days jail |

Based on my training and experience, along with the entire investigation, including multiple seizures of methamphetamine, the intercepted telephone calls and text messages, I believe that SEDGWICK and BOWEN were engaged in a conspiracy to distribute methamphetamine.